Good morning ladies and gentlemen. Our first case for this morning is Rhodes v. Dittmann and we are ready to hear from you Mr. O'Brien. May it please the court, Assistant Attorney General Daniel O'Brien for the In Feretta v. California, the Supreme Court gave Joel Rhodes and criminal defendants like him the Sixth Amendment right to represent himself at trial. Joel Rhodes voluntarily and intelligently exercised that right at pre-trial hearings held April 2nd and 6th, 2007, a full month before his trial. Joel Rhodes tried to revoke that right of self-representation on the eve of trial. There is no clearly established United States Supreme Court precedent giving him the right to do so. The district court acknowledged that there is no such precedent giving him that right. The district court further acknowledged Excuse me Mr. O'Brien, the interesting thing about this case is that as I understand the court's opinion, it's a D2 unreasonable determination of facts that he's talking about, not a D1 identification of law or application of law and I guess I'm interested in your view about how the unreasonable determination of facts branch works because I thought the judge said if it had been time only I would have said this was reasonable but I don't know what the state judge would have done with this idea that Mr. Rhodes was being manipulative. So how do you think this whole part of the law works? Well I don't think D2 can be detached from D1. After all, Rhodes has to prove his custody is in violation of the United States Constitution, that's 2254A. So in analyzing under D2, there still has to be a clearly established constitutional right. I believe that that must be found before you can determine whether in applying that clearly established right the court erred and made erroneous findings of fact such as the clearly established right to the effective assistance of counsel under Strickland v. Washington where that law is clearly established by the United States Supreme Court but a district judge can make unreasonably determined determinations of the facts and concluding that there was no deficient performance and a federal judge can then reverse. So I think the error in the district, and I think you're right to acknowledge that the district judge acknowledged that the state courts could and what's more important here in fact did determine factually that the 11th hour nature of the request and its disruptive impact on the trial are sufficient reasons to deny him revocation of his right to self-representation. But that's the interesting thing. I mean the judge said that for sure but sometimes, I mean it happens with review of various fact findings, that you don't know what the influence of one correct factor and then we'll just hypothesize. I know you don't think this is the case but hypothesize one incorrect factor. When you stir them all up, would the trial judge have done the same thing? Well I understand that's what the district judge did but I don't think the AEDPA jurisprudence allows him to do that. Once you can find a valid both factual and legal basis in the record to uphold the state court, you have to uphold the state court. I think Harrington v. Ritker is quite clear on that. I think Marshall v. Rogers is quite clear on that in this situation. I think you can't divorce the fact findings from again the clearly established whatever clearly established constitutional principle is out there. So let me ask you this. I mean obviously I understand that that's your argument. The trial judge is clearly very uncomfortable with what he perceives as Mr. Rhodes' manipulative behavior. And one of the things he comments is that Mr. Rhodes had challenged the performance of COVAC in the earlier appeal, although that happens to be an issue that the Wisconsin court didn't reach. Do you happen to know if Mr. Rhodes was represented by counsel in that state court appeal? He was. He was. So counsel raised the ineffectiveness. Obviously it couldn't have been Mr. COVAC. No. So some other lawyer said that Mr. COVAC was ineffective and it never gets reached. And the judge attributes this as some animus that Mr. Rhodes has against COVAC. Well, and there were very serious allegations. One allegation was that he improperly cross-examined a witness that opened the door to damaging testimony. And another was that he improperly counseled Mr. Rhodes on whether or not he should testify. So those are fairly serious allegations. Moreover, when the case was reversed on a separate, on a ground unrelated to the ineffectiveness. Right, the jury issue, right. Yeah. Mr. Rhodes did not hire COVAC. Instead he was appointed an attorney Kaiser, which I find interesting because somehow he convinced the state courts that he was indigent and got appointed counsel of Attorney Kaiser who was on the case for over a year. And yet later on he has the funds to somehow retain Attorney COVAC. Be that as it may, it's clear from the April 2 and 6 hearings that Mr. Rhodes was talking to both attorneys Kaiser and COVAC in the months preceding those hearings and getting advice from both of them. He eventually fired Kaiser at those hearings but did not say, Judge, now I intend to retain Mr. COVAC as my trial counsel. He did not do that. He said all along, I want to represent myself because I think I can do a better job. And that was confirmed by Attorney Kaiser in his lengthy motion before those hearings, which is, I believe, in document 18 in the district court record, that March 13 motion by Attorney Kaiser which details Mr. Rhodes' understanding and knowledge and willingness and desire to represent himself. And that is in fact confirmed by Mr. COVAC himself at the April 6 hearing who said, I don't think Mr. Rhodes is playing games here. I think he really does want to represent himself and he's an intelligent man. He's even written a book. And the district judge, as I read the opinion, says that part's all fine. There's nothing wrong with the courts granting Rhodes' motion to relieve Kaiser, certainly nothing that would be reachable. That's correct. So we're not worrying about that. The district judge found a voluntary and intelligent Johnson v. Zerbst waiver. That's correct. Right, right. So what are we to make of this April 18 letter from Rhodes in which he says he's authorized Attorney COVAC to speak on his behalf? What does that mean to you? I guess what it means to me is that I'm in jail and if there's any sort of pretrial conference, any type of pretrial proceeding that I don't need to be present, I'm authorizing him to appear. That's the way I read it and I think that's the way it can reasonably be read. I don't think it can be reasonably read as I hereby revoke the right to self-representation I exercised 12 days earlier and I hereby retain Attorney COVAC to represent me at the May 7th trial. You can answer this about Wisconsin procedure. Is there any normal procedure in Wisconsin under which a trial court would not allow an attorney to speak on someone's behalf without filing an appearance? It seems a little strange to have somebody come up without an appearance. You know, off the top of my head, I don't. Now, obviously, if the attorney is not licensed to practice law in Wisconsin or admitted to the Wisconsin bar, other than that, I think it's a discretionary decision. I think, you know, again, and again we get back to constitutional principles, I think a judge can allow hybrid representation of this sort but is not constitutionally required to do so. And I think... And again, the district court, I think, was with you on that point. The district court recognized no hybrid right. That's correct. And I think when you get right down to it, that's really what was going on here. I think Attorney COVAC's May 6th letter gives you an insight into what was really happening. And it's consistent with Mr. Rhodes and COVAC's behavior from long before he fired Attorney Kaiser, which was he was represented by Kaiser but he was also getting advice and counsel from COVAC who really seemed to be acting more as a friend than as a retained lawyer. And in the May 6th letter, this is after all of this happened, after the judge denied it. COVAC again says, I am not counsel of record. I was hired, again, a supposedly indigent man, hired Mr. COVAC to provide advice and counsel. Advice and counsel for what? For representing himself. That's what this was all about all along. Sure, in a perfect world, Rhodes would love to have had Mr. COVAC represent him, but COVAC wouldn't and couldn't. And Rhodes understood that and yet maintained his decision to represent himself until the 11th hour when he got cold feet. Well, it's a strange record, I have to say, because COVAC, every time the court asks COVAC to say something, COVAC in a sense says, you know, I could do this if I had more time. And nobody ever follows up whether COVAC should have or Rhodes should have or the court should have. Nobody ever says, well, how much time are you talking about? So I can't find an actual request for more time in this record, even if we think the trial court would have turned it down. And that's interesting. And Rhodes was certainly sophisticated enough to himself at some point before trials say, Judge, as a pro se litigant, I hereby move for an adjournment and I hereby move to have Attorney COVAC either appointed or retained to represent me at trial. There was no formal motion until that May 3rd letter, which really wasn't even a formal motion. It was a request in a letter that was supposedly drafted by Rhodes, although it has all the earmarks of something that was drafted by COVAC. But up until then, there's no formal request. No one says, Judge, if you give COVAC 30 days, we can do this and I will revoke my right to self-representation. The first formal motion was on May 8th, the second day of trial, when Rhodes said, I hereby revoke my right to self-representation and I want COVAC to represent me. That's the first formal action that anyone made. And I think that's, again, this 11th hour nature is a compelling fact, I think, that supports the state courts here, whether or not you buy the manipulation. But I think the coyness of both these people does support a finding manipulation. Manipulation to do what? To get a backdoor adjournment of the trial, even though COVAC, who handled the first trial, handled two trials with Mr. Rhodes on two separate kidnapping charges. He's facing a retrial on one of the kidnapping charges. He should have been able to try that case the day after the April 6th hearing. He was so conversant with the facts, as was Rhodes. Why was he unable to represent? Well, it might have been other cases. It might have been other obligations that he had that would have interfered with that trial. Well, but he didn't say that. He just said, I can't be prepared. I thought there were new witnesses. I'm sorry? I understood from the record, maybe I'm misremembering, but I thought there were new witnesses as well, that it was going to be a little different. That's a little confusing, because there were witnesses that came to light in a search of Mr. Rhodes' cell that occurred in March, long before the April 2nd and April 6th hearings. But different from the first trial, though. That's my understanding, although, yeah, that's what they claim. Now, that is not entirely clear how many different witnesses came about. But the fact is, most of these concerns that Mr. Rhodes raised in his handwritten May 1st letter, where he did ask for an adjournment, but did not ask for retention of Attorney Kovach, but asked for an adjournment because of difficulties in trial prep, he seems quite conversant with who these witnesses are and what they might have to say. And so, sure, it was difficult for him to prepare, but he had a grasp of what the state's case was sufficient to enable him to proceed to trial. Okay, if you would like to save a bit of rebuttal time. Yes, I would, please. I'd be happy for you to do that. Thank you. Thank you. Mr. Mullins. May it please the Court. My name is Brian Mullins, and I represent Joel Rhodes. I would like to begin. So, Mr. Mullins, I'm going to ask you to begin here. What exact date are you relying on here for the date when Mr. Rhodes clearly informs the state trial court that he wants to revoke his waiver of his right to counsel? Well, we believe the date should have been considered to be April 18th. But that's not what the district court, the federal district court, said. Correct, and we disagree with the district court on that issue. Because the only thing he says on April 18th, that's why I asked about filing appearances and so on, he says he's authorized Attorney Kovach to speak on his behalf, but he knows what it means to say, my new lawyer is Mr. Kovach, or words to that effect. It's ambiguous, isn't it? Well, I think a pro se litigant should be given some leeway to be ambiguous. He isn't conversant in what exactly needs to be said to revoke the waiver. Also, I think it has to be considered in tandem with his comments at the April 6th hearing, in which he said at the end of that hearing that he wanted to retain Attorney Kovach. So I understand that point, and that we are talking here about retained counsel, not about appointed counsel, which makes a bit of a difference. But still in all, up until and after even April 24th, Kovach is telling the state trial judge that he cannot in good conscience be prepared in time for the May 7th trial. Kovach isn't, he has not filed an appearance, he hasn't in any way formally alerted the judge to his role in the case, and I can't believe if Kovach has been an attorney for any length of time, he doesn't know how to ask for an extension of time. It's impossible. That's where there is some, probably some omission in the record, is that nobody ever asked how much time Kovach needed. The court didn't ask Mr. Kovach how much time he needed. Isn't it Kovach's duty to say, you know, Rhodes has asked me to represent him, I'd love to do that, but Your Honor, I'm going to need another month beyond May 7th. As Judge Tinder points out, maybe he had trials, maybe he had other stuff. Well, I think this goes back to our first argument that there is a presumption against waiver of counsel. But does that presumption still operate after something like the April 6th colloquy in which the court very thoroughly asks Mr. Rhodes, you know, you have a right to counsel, it's not a good idea not to do, it goes through the whole routine that Feretta contemplates, and Mr. Rhodes says, I'm going to do it myself. So why is that presumption still in effect after that exchange? Well, just to make clear our argument, we are arguing that he never did validly waive his right to counsel at the April 6th hearing because he made that comment and because the trial court did not delve into the comment further by, for example, asking Mr. Kovach, when can you be ready for trial? By asking Mr. Rhodes, well, it looks like Kovach can't be ready, do you still want to retain him even if that would mean adjourning the trial? By asking the state if they objected to adjourning the trial. And it's the court's responsibility at that first stage when there is the waiver hearing, the Feretta hearing, it's the court's responsibility to guarantee that that waiver is valid. Well, I agree with you, and I don't even disagree that it might have been nice if all of those things had happened, but the question before us is whether the state court's handling of the waiver was so far out of bounds that it really lays the groundwork for a violation of Mr. Rhodes' right to counsel. And we believe that it does, and just to make clear, that's our first argument, is that the court could affirm the district court on a basis that the district court didn't find itself, and that would be based on Brewer v. Williams, Von Moltke v. Gillies, and Feretta itself, that courts must indulge every reasonable presumption against waiver. So we believe as to that the first question of waiver, it was the court's responsibility to delve further into the possibility of Mr. Rhodes retaining COVAC. As to later on, I think that gets to the timing issue. I think I would like you to talk about the timing issue because Mr. O'Brien argues the district judge himself, the federal district judge, says this was beyond the 11th hour. This was the end of the day request, and it was way too late, and any trial judge would be within his or her rights to say you're just too late. The ship has sailed, whatever you want to say. And why isn't that alone enough to say that the judge should not have granted the writ? Because it's not clear that the judge's decision was based on that reason alone. But does that matter in this world of Harrington v. Richter and all of these decisions of the Supreme Court stressing how one has to uphold what the state court did if there is an acceptable basis putting all the deference that you need to put in in the record? Harrington is a D1 case. It's not a D2 case. I understand, but why is the principle of deference so different on facts than it would be on law? Well, there is a principle of deference that applies to facts, which is that Mr. Rhodes bears the burden to prove that the facts were unreasonably determined, and the district court properly found that Mr. Rhodes met that burden. So that's the deference that is due to the state court. I think just the language itself that must be unreasonably determined is fairly deferential language. So I think the statute itself and the case law requiring that Mr. Rhodes bears the burden builds that deference to the state court into it, into the analysis. So Wood v. Allen looks at the word unreasonable in the D2 situation, and the Supreme Court there says that it's a rigorous burden of proof. I want to know why the full pattern of things, starting with the allegation of ineffective assistance of counsel and the direct appeal in the state court that washes out, we all understand that, moving through I think what appears to be the state trial judge's concern that if Kovach comes back in, we're just embedding error back into the system. He's doing it in a rush, or he was the lawyer who had other problems. I mean, it's not that manipulation never happens in cases. It does sometimes happen. I think the court, I think the district court was correct in that the fact that Mr. Rhodes alleged that Kovach was ineffective at the first trial really doesn't mean much given that. They had no ongoing conflict of interest. Rhodes had never argued that Kovach was a per se ineffective lawyer. As the court asked the state during the state's argument, this was an argument made by Mr. Rhodes' counsel. It's unclear what role Mr. Rhodes played in developing that argument. So I think it just doesn't seem relevant, and the district court's finding, and the district court analyzed that issue, which it was required to do. If the state is correct that the district court has to look for reasons to uphold the state court's decision, it did that, and it just found those reasons lacking. But the problem is we certainly don't decide de novo looking at this record whether there was evidence to support the finding of manipulation. Mr. Rhodes has to convince us by clear and convincing evidence that this was an unreasonable inference to draw from the pattern of action that was before the trial judge, the state trial judge. So sitting down and doing it de novo, I guess we could all come to whatever conclusion we want to come to, but that's just not the standard. And we believe we show an unreasonable inference given that Mr. Rhodes had given the court a lot of valid reasons to discussing his difficulties preparing for trial, new witnesses that had been disclosed by the state, new evidence that had been disclosed by the state that Mr. Rhodes was claiming was illegally seized from his jail cell. The discovery issue... Hadn't that all happened before the April 6th Feretta hearing, though? Well, there were new witnesses added. That was discussed after the Feretta hearing. The discovery issue itself, I think, is significant given that the discovery was on computer disks, many of it, much of it. Mr. Rhodes is trying to prepare for a trial from the jail. The computer had broken down in the jail, and this issue was really tossed aside by the trial court. So I think in that context, Mr. Rhodes meets his burden to show that the finding of gamesmanship was clearly erroneous. And I would point out the trial court's comments at the April 6th hearing, which were the hearing on the motion to withdraw by Attorney Kaiser. And this was before there was any discussion of Attorney Kovach, before there was any discussion of a request to adjourn. The trial court said, what's the game now? Now, other than the obvious to the court as to why you are doing this, is there some real reason as to why you want to represent yourself? And then Mr. Rhodes asked him, what's obvious? And then the court responded, the obvious to the court is that someone like you is trying to build in a record on an appeal, and if anybody doesn't recognize that, then they haven't been around long enough to understand what's going on. What that indicates is that before any of these issues arose, the trial court had an assumption that Mr. Rhodes was trying to play games. What the assumption was based on is not clear. We can surmise a few things, but it really isn't clear from the record. And I think that supports the district court's finding that the trial court's assumption on gamesmanship tainted the judge's reasoning. That was the same trial judge who wrote the opinion on the post-conviction review, was it not? Correct. So we have his opinion on the post-conviction review to look at as well, right? Correct. Rather than just simply take some remarks of his trial. Correct. But I think this shows, this was the first thing he said at the April 6th hearings, the opening comments that the court made, and I think this shows the tenor of the attitude by the trial court throughout the proceedings, and that just increased as time went on. And what the district court found was that you cannot separate the finding of gamesmanship from any other valid issue. And I think this case is, the analysis in this case should be similar to this court's analysis in Carlson v. Jess, where the right at issue was the rights counsel of choice. And the district court found that the trial court incorrectly found that there had not been a breakdown in communication between the defendant and his counsel. Therefore, the district court should have allowed an adjournment to bring in new counsel. Now, there was another basis for denying the adjournment that the trial court had given, which was the age of the witness was a sexual assault case. And so there was a witness issue in that case. But this court, once that erroneous factual determination is made, then the de novo standard is applied by this court, even on federal habeas review and even after AEDPA. Mr. Mullins, if I may ask about that factual finding that really is the hook for the federal district court to have done what it did here. The paragraph 20 of the state appellate court's decision, it says that the finding of fact seems to be that there was gamesmanship. And it seems to support that fact with two subsidiary, well, one characterization and one fact. The characterization is that the demands of your client, Mr. Rhodes, were mutually exclusive. And arguably, that's a characterization more than an adjudicative fact, I suppose. And then secondly, at the bottom of that paragraph, in the alternative, apparently, the court says, moreover, in effect, the repeated altering of the position on counsel involved obstruction and delay of the orderly administration of justice. At best, why isn't that second reason sufficient to support what the trial judge did? That's not erroneous. Because it isn't, I don't believe it's considered an independent reason from the reason of gamesmanship. No, it supports gamesmanship. It supports gamesmanship. It seems to me the primary finding of fact in that paragraph is gamesmanship. And that's what the district court found was? No, the district court was upset about this incapable of satisfying mutually exclusive requests. Well, I think the finding of gamesmanship based on the timing is also incorrect by the state court because it could certainly be construed that this issue was brought to the trial court's attention. Did the district court find that? It did not. It assumed that the date was May 3rd. Although it commented that the issue could have been brought from the trial court, could have been raised by the trial court sooner than it had, but it was not willing to consider that an abuse of discretion. All right, if you want one sentence to wrap up, I'll let you do that. We ask the court to affirm the district court. All right, thank you very much, Mr. Mullins. Anything further, Mr. O'Brien? The April 6th hearing, Attorney Kovach gave two reasons why he was not representing, would not represent Rhoades at the trial. The first was, in his words, financial, but that's not all that important. But what's more important is that I cannot ethically represent him because I cannot be prepared for trial. But there was also a third reason that came out of that hearing. If you looked at Mr. Kovach's comments at the April 6th hearing where he's vouching for Mr. Rhoades' ability to handle the trial, Mr. Kovach reveals a dispute over strategy. Mr. Kovach says Mr. Rhoades wants to represent himself. He believes he can win this at trial. And then on the next page he says, I believe this should be resolved short of trial, i.e., we need to work on a plea bargain. That's a significant strategic dispute. Mr. Rhoades challenged Mr. Kovach's effectiveness after the first appeal. Believe me, he would have challenged his effectiveness after conviction in this case. He had this unprepared lawyer who disagreed with his strategy, represented him at trial. This court is bound by the ADPA to uphold what is a reasonable decision of both the Wisconsin Trial Court and the Wisconsin Court of Appeals deferring to the trial court's exercise of discretion. There is no clearly established right for Mr. Rhoades to revoke at the 11th hour his decision to represent himself. Thank you. Thank you very much. Thanks to both counsel. We'll take the case under advisement.